CITIES: CONSOLIDATION: ELECTIONS:    Voter approval of consolidation requires affirmative vote of majority of persons voting on the question.  Minn. Stat. § 414.01, subd. 6 (1998).

484e-1
(Cr. ref. 185b-2)

October 5, 2000

R. Lawrence Harris
Melchert Hubert & Sjodin
121 West Main Street
Suite 200
Waconia, MN  55387

Thomas J. Radio
Hinshaw & Culbertson
Piper Jaffray Tower, Suite 3200
222 South Ninth Street
Minneapolis, Minnesota 55402-3336

Dear Mr. Harris and Mr. Radio:

In your letter to Attorney General Mike Hatch you relate substantially the following

## FACTS

On March 3, 1997, the Minnesota Municipal Board by its own motion, pursuant to Minn. Stat. § 414.041, subd. 1(c), initiated consolidation proceedings between the City of St. Bonifacius and the City of Minnetrista.  On August 5, 1997, the Minnesota Municipal Board appointed a Consolidation Study Commission chair and the members of the commission.

On June 4, 1999, the Office of Strategic and Long-Range Planning ("State Planning") as successor to the Minnesota Municipal Board[1] received a report of the Consolidation Study Commission, which report recommended the consolidation of the City of Minnetrista and the City of St. Bonifacius into a new city named Minnetrista.  State Planning held a public hearing on the Consolidation Study Commission report on July 28, 1999.

By order effective January 18, 2000 State Planning accepted the report of the Consolidation Study Commission and directed the consolidation of the City of Minnetrista and the City of St. Bonifacius into a single city, subject to adoption of the order by a majority vote of the respective city councils and voter approval.

---

[1] Under Minn. Stat. § 414.11 (Supp. 1999) the Municipal Board was abolished on June 1, 1999, and its authority and duties were transferred to State Planning.

Pursuant to Minn. Stat. § 414.041, subd. 6(c), if the consolidation proceedings are initiated by the Municipal Board's own motion the consolidation is not effective until adopted by the council of each municipality and approved by their qualified voters at a general or special election set according to law. The city councils of both St. Bonifacius and Minnetrista rejected the consolidation order. Within 90 days of the rejection of the consolidation order by the two councils, each city received a petition signed by ten percent or more of their resident voters who voted for governor at the last general election petitioning for a referendum on consolidation. Subsequent to receiving the petitions, the city councils met jointly with State Planning staff and set a referendum on the consolidation for the next general election, November 7, 2000.

Because each city council disapproved the consolidation order, the issue is being placed on the ballot pursuant to Minn. Stat. § 414.041, subd. 6(d) which provides as follows:

> Notwithstanding a disapproval of the board's order for consolidation by a city council of an affected municipality required to approve the board's order in clause (a) or (c), the board's order for consolidation shall nevertheless be deemed approved by that city council if ten percent or more of the resident voters of that municipality who voted for governor at the last general election petition the city of council for a referendum on the consolidation as provided in clause (a), and *a majority of those voting in the municipality* approve the board's order for consolidation.

(Emphasis added).

You then ask substantially the following

## QUESTION

Does Minn. Stat. § 414.041 subd. 6(d) require that the consolidation order be approved by a majority vote of all persons voting at the general election or a majority vote of all persons voting on the issue of consolidation?

## OPINION

We answer your question in the negative. In our opinion the consolidation will be effective if it is approved by a majority of those who vote on the question of consolidation in each city.

Under Section 414.041 subd. 6(d), approval of consolidation must be by "a majority of those voting in that municipality." At first impression that language is ambiguous. It could be taken to refer to those voting on consolidation, or in the case of a referendum held at the same time as a general election, to all of those casting ballots for any office or question. In our view, that ambiguity must be resolved in favor of counting only voters on the consolidation question.

First, requiring majority approval of all voters would be contrary to long established principle. As noted by the Minnesota Supreme Court in *Dayton v. City of St. Paul*, 22 Minn. 400, 403 (1876):

> It is the general rule, in affairs of government, that an election, or a voting, whenever called for, is to be determined by the votes of those who vote to fill the office which is to be filled, or for or against the proposition which is to be adopted or rejected, and not by counting, on either side, those who do not vote at all. To take a case out of this general rule requires a clearly manifested intention to apply a different one.

In that case, the court held that the requirement that a constitutional amendment to be ratified by "a majority of the voters present and voting," required only a majority of those voting on the amendment itself. The court contrasted the quoted language with other language in the same constitutional article, requiring that a call for a constitutional convention be approved by "a majority of all the electors voting at [the next general] election."[2] Consistent with that distinction, decisions requiring a majority vote of everyone voting at general elections have construed constitutional or statutory language that expressly called for approval of a proposition by a majority of those "voting at [a particular] election." *See, e.g., Eikmeier v. Pipestone Co.*,

---

[2] The Constitution was later amended to require that proposed constitutional amendments also be approved by "a majority of all the electors voting at [a general] election." (1897 Minn. Laws, ch. 185.)

131 Minn. 287, 155 N.W. 92 (1915) and cases discussed therein. In this situation, the statutory language does not expressly require that the consolidation be approved by a majority of all persons voting at a general election.

Second, it is important to remember that on November 7, 2000, the voters of St. Bonifacius and Minnetrista will be able to participate in at least two different elections. One will be the general election for various national, state and local offices. The other will be the consolidation referendum. Though they could have been scheduled for different dates, State Planning, in consultation with both city councils, set the referenda at the time of the general election; presumably for reasons of economy and convenience of the voters. Nevertheless, they are distinct electoral activities. To construe section 414.041 subd. 6(d) as requiring consolidation approval by a majority of all electors voting in the general election would mean that the standard for voter approval could depend entirely upon the timing of a consolidation proposal. That timing, normally bearing no relationship to the merits of a consolidation proposal, would often be the result of arbitrary circumstances. In some circumstances, it could be subject to manipulation in an effort to affect the outcome of the election.

Under section 414.04, subd. 6, when a consolidation referendum is ordered as a result of a petition submitted by the voters, the election must be held within six months of the receipt of the petition. *Id.* paragraphs (a), (b), and (d). In the instant case, the timing of the State Planning order, and the petitions by the voters, were such that the referenda could be scheduled to coincide with the November biennial general election. However, such coincidental scheduling is possible

for less than one-quarter of the 24-month general election cycle.[3] For most of that time, a consolidation referendum would need to be held as a special election, apart from any general election. In those instances only persons going to the polls to vote in the special election could be counted. In our view, to require that a higher number of affirmative votes be cast only when the vote can be held at a general election due to the time when the issue arises would be an unreasonable result, not intended by the legislature. *See* Minn. Stat. § 645.17(1).

This analysis is consistent with *Godward v. City of Minneapolis*, 190 Minn. 51, 250 N.W.719 (1933) where the court concluded that a vote on a charter amendment was to be viewed as a separate special election even though held concurrently with a general election. *See also* 26 Am. Jur. 2d *Elections*, § 409 which reports in part:

> Where it is contemplated that a proposition may be submitted at either a general or special election, the fact that, for convenience, it is submitted at the former, does not alter the character of the election as a special election, and therefore a majority only of the votes case on the special question, although less than those case for officials, is sufficient. (footnote omitted)

Finally, we have considered that section 414.041 subd. 6(c) states that a consolidation initiated by municipal board action and approved by the city council, will be effective if favored at referendum by a majority of "votes cast on the question," but such explicit clarification is not contained in paragraphs (a) or (d), under which these referenda are to be held. In your letter you suggest that such an omission could indicate legislative intent to require only a majority of those voting on the question when the city councils have already approved the consolidation, but to

---

[3] Given the statutory requirements for advance notice, referenda could not normally be ordered less than 45 days before an election. *See* Minn. Stat. § 205.16.

require a higher standard when the councils have not so approved. That argument is not persuasive.

The "majority of those voting" requirement in paragraphs (a) and (d) is not limited to instances when the city council has failed to approve. It also applies to petition-initiated elections when the councils did approve. *Id.*, par. (a) and (b). As noted above, if the alternative construction were adopted, the standard for computing the requisite voting majority would depend on the arbitrary factor of timing, not council approval or disapproval.

For these reasons, it is our view that the consolidation proposal will be adopted if approved by a majority of the voters voting on that proposal.

Respectfully submitted,

MIKE HATCH
Attorney General

KENNETH E. RASCHKE, JR.
Assistant Attorney General

AG: 408731,v. 01